```
                   UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF LOUISIANA

MICHAEL TVETEN                                CIVIL ACTION

VERSUS                                        NO: 07-9702

A.O.K. EQUIPMENT, L.L.C., ET                  SECTION: J(5)
AL
```

**ORDER AND REASONS**

Before the Court is Defendants A.O.K. Equipment, L.L.C. and Jonas Kirk's (collectively, "A.O.K.") **Motion for Summary Judgment (Rec. Doc. 12)**. This motion, which is opposed, was set for hearing on August 6, 2008 on the briefs. Upon review of the record, the memoranda of counsel, and the applicable law, this Court now finds, for the reasons set forth below, that A.O.K.'s motion should be denied.

**Background Facts**

Plaintiff was working as a contract construction employee on the production set of a movie filmed at various locations in New Orleans during 2006 and 2007.[1] The movie production was *The*

---

[1] Specifically, Plaintiff was employed by an entity called Entertainment Partners, Limited, which will be discussed further *infra*.

*Curious Case of Benjamin Button*, L.L.C. ("Benjamin Button"). On February 15, 2007, Plaintiff injured his hand while using a Hitachi chop saw leased to Benjamin Button by A.O.K. The Hitachi chop saw was leased to Benjamin Button as part of a larger rental of three full trailers of equipment and power tools, i.e., in bulk, for an extended period of time, from August 2006 through February 2007, and was moved to different shooting locations in and around New Orleans.

Plaintiff alleges that after cutting a piece of wood, he released the trigger on the chop saw and intended to pick up the wood, but the guard failed to come back down, allowing the blade to severely cut his hand. Furthermore, the blade continued turning after Plaintiff released the trigger and raised the saw, further causing the severe cut to his right dominant hand.

Plaintiff filed a personal injury action in Civil District Court for the Parish of Orleans alleging negligence on the part of A.O.K. for alleged failure to maintain its leased equipment and for allegedly providing faulty equipment. Defendant subsequently removed pursuant to this Court's diversity jurisdiction.

## Discussion

In support of its motion, A.O.K. argues that neither of the grounds alleged by Plaintiff purporting to impose liability on A.O.K. are supported by adequate law or fact. In opposition,

2

Plaintiff argues that genuine issues of material fact exist which preclude summary judgment.

**A.   Legal Standard**

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citing Fed. R. Civ. Proc. 56(c)). The moving party bears the initial burden of demonstrating to the court that there is an absence of genuine factual issues. Id. Once the moving party meets that burden, the non-moving party must go beyond the pleadings and designate facts showing that there is a genuine issue of material fact in dispute. Id.

"A factual dispute is 'genuine' where a reasonable jury could return a verdict for the non-moving party. If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial and summary judgment is proper." Weber v. Roadway Exp., Inc., 199 F.3d 270, 272 (5th Cir. 2000) (citations omitted). The non-moving party's burden "is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a

'scintilla' of evidence. [The courts] resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *[The courts] do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.*" Little, 37 F.3d 1075 (emphasis in original) (citations omitted).

**B.   Lessor Duties**

First, as to Plaintiff's allegation under certain Louisiana statutes pertaining to lessor's duties and warranties, specifically, the warranty against vices or defects under Louisiana Civil Code article 2696,[2] A.O.K. argues that pursuant to the written lease agreement[3] between A.O.K. and Benjamin Button, such a warranty was waived.[4]

The warranty against vices and defects under La. Civil Code article 2696 arises by operation of law in every contract of

---

[2] La. Civ. Code article 2696 provides: "The lessor warrants the lessee that the thing is suitable for which it was leased and that it is free of vices or defects that prevent its use for that purpose. This warranty also extends to vices or defects that arise after the delivery of the thing and are not attributable to the fault of the lessee."

[3] The lease agreement consists of an invoice/delivery receipt with the terms of the lease agreement contained on the reverse side.

[4] As to a lessor's duty to maintain equipment leased to another pursuant to La. Civil Code article 2682, A.O.K. argues that this duty was transferred to Benjamin Button on the same basis as the transfer of the duty regarding vices and defects.

4

lease.  See Ford New Holland Credit Co. v. McManus, 833 So. 2d 1130, 1133 (La. App. 2d Cir. 2002).  However, the warranty of article 2696 can be modified by agreement.  To be effective, a waiver of warranty must be: (1) written in clear and unambiguous terms; (2) contained in a written contract; and (3) brought to the attention of the lessee or explained to him.  See McKnight v. McCastle, 928 So. 2d 45, 49 (La. App. 1st Cir. 2005).

    A.O.K. argues that the waiver of warranty contained in the lease agreement entered into between A.O.K. and Benjamin Button satisfies these requirements.  As to the first and second requirements, A.O.K. points to the lease itself, which it argues states that Benjamin Button assumed responsibility for the condition of the tools and equipment leased from A.O.K.  See Exhibit C to A.O.K.'s motion - Agreement, pg. 2, paragraphs 2, 3(a)-(c) ("Customer is responsible for any damage, including but not limited to paint over spray, to the Equipment while in its possession or care, except for reasonable wear and tear.").  Furthermore, paragraph 8 of the agreement contains language, written in bold capitalized letters, disclaiming any and all warranties not listed in the agreement.[5]  The only warranty

---

[5] The language reads:

> **THE WARRANTIES SET FORTH ABOVE ARE IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, WHICH ARE HEREBY DISCLAIMED BY [A.O.K.], AND WHICH ARE EXPRESSLY WAIVED BY CUSTOMER [BENJAMIN BUTTON], INCLUDING WITHOUT**

listed is one whereby A.O.K. warrants that it has the right to rent the equipment and that the equipment conforms to the description stated in the agreement.  The agreement also states that Benjamin Button agreed to indemnify and hold A.O.K. "harmless against any and all claims, demands and suits . . . for any and all bodily injury, property damage, or any other damages or loss."  See Exhibit C to A.O.K.'s motion - Agreement, pg. 2, paragraph 18.

Regarding the third requirement, A.O.K. points to language in the lease agreement which states that A.O.K.'s policies on loss damage were explained to Benjamin Button at the time the parties entered into the agreement.  See Exhibit C to A.O.K.'s motion - Agreement, pg. 2, paragraph 16.  Thus, according to A.O.K., the lease agreement contains all the elements necessary to waive the default warranties of La. Civ. Code article 2696.

In opposition, Plaintiff argues that there was no binding contract between A.O.K. and Benjamin Button, as there is no proof that a representative of Benjamin Button ever signed the agreement on behalf of the entity.  The invoice was signed by Robert Laux, Labor Foreman, who was employed by another entity, Entertainment Partners, Limited, and not Benjamin Button.

Regardless, Plaintiff argues that there is no evidence that

---

**LIMITATION ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.**

waiver of the warranty against vices or defects was explained to anyone at Benjamin Button, particularly since an employee of Entertainment Partners, Limited signed the agreement.

In reply, A.O.K. explains that Entertainment Partners, Limited is a hiring/payroll agency used by the movie and television production industry to manage the administration of employees who provide labor to particular productions, such as Benjamin Button.  While Benjamin Button employs some highly placed individuals directly, such as the producer, director, and some actors, the majority of workers are hired through Entertainment Partners, Limited.  Once such workers are hired, Benjamin Button determines the workers' schedules, provides their work place, tools, and supervision, and retains the ability to hire and fire workers as necessary.  Thus, Plaintiff and Plaintiff's similarly-situated co-workers were employed by Benjamin Button through Entertainment Partners, Limited.  In other words, as a payroll/employment management company, Entertainment Partners, Limited was not the principal employer of Robert Laux, who signed the agreement.  Instead, it was Benjamin Button who hired Laux, albeit through Entertainment Partners, Limited.  As a result, A.O.K. argues that Laux validly signed the lease agreement and accepted its terms and delivery of the tools leased by A.O.K. on behalf of Benjamin Button as its employee.

Notwithstanding and without determining whether the lease

agreement was a binding contract between Benjamin Button and A.O.K., there exists at least one genuine issue of material fact sufficient to preclude summary judgment.  Namely, it is unclear whether the waiver of the warranty against vices or defects was adequate insofar as there is no evidence before the Court regarding whether the waiver was brought to the attention of Benjamin Button through its employee Laux, and/or whether the waiver was explained to him.  In cases upholding waiver of warranty provisions, "the facts surrounding the waiver showed that the lessee . . . either actually read the waiver language in the lease . . . or the waiver in writing was so prominent and unmistakable in larger block letters in full view of the signer such that the lessee . . . could not have missed the waiver."  <u>Ford New Holland Credit</u>, 833 So. 2d at 1134 n.1.  In this case, while the waiver language was bolded and capitalized, it is not clear whether the waiver was pointed out to the signer of the agreement.  Furthermore, the language appeared on the <u>reverse side</u> of the invoice, so it may have not been in the "full view" of the signer.

**C.    Negligence**

Plaintiff alleges that the chop saw, an object under the custody or garde of A.O.K., caused him damage and that A.O.K. is liable for such damage under La. Civil Code article 2317.  To establish a negligence claim under article 2317, the plaintiff

must "prove that the structure was in the defendant's custody, that it contained a defect that presented an unreasonable risk of harm to others, that the defective condition caused the damage, and that the defendant knew or should have known of the defect." Brown v. Williams, 850 So. 2d 1116, 1120 (La. App. 2d Cir. 2003).

According to A.O.K., Plaintiff's claim under La. Civil Code 2317 fails for three reasons.  First, A.O.K. argues that it did not have custody or garde of the chop saw at the time of the instant accident.  The Fifth Circuit has defined having garde or custody of an item as having "substantial power of usage, direction, or including the practical ability to discover defects" of the object.  Pickett v. RTS Helicopter, 128 F.3d 925 (5th Cir. 1997).  A.O.K. argues that based on the potential length of the lease and the various potential locations of its tools and equipment, A.O.K. did not have the "substantial power of usage [or] direction" necessary to have garde or custody of the chop saw.

Second, A.O.K. argues that Plaintiff has presented no evidence that A.O.K. was ever made aware of allegations concerning, or actual problems with, the chop saw.  Third, A.O.K. argues that because the chop saw is a "dangerous power tool" used for high volume construction work, it is inherently dangerous. Thus, it is difficult to analyze its unreasonable risk of harm when its proper function is a dangerous undertaking.  Regardless,

9

A.O.K. argues that it did exercise reasonable care by servicing the chop saw before it was taken to the production location by Benjamin Button.  Once Benjamin Button took possession of the leased equipment, including the chop saw, A.O.K. argues that Benjamin Button assumed maintenance and responsibility for reporting defects to A.O.K. according to the terms of the lease agreement.

In opposition, Plaintiff argues that A.O.K. was made aware of complaints and/or reports of malfunction or defects concerning the chop saw.  Plaintiff attaches the affidavits of two of Plaintiff's co-workers at the time of the accident which establish that there were problems with the chop saw and that these problems were made known to the tool man who worked at the production site prior to the accident at issue.  This tool man allegedly reported to A.O.K.[6]  Furthermore, Jonas Kirk, as corporate representative of A.O.K., testified that he was the "Construction Coordinator" on the set of Benjamin Button and was present on the set.  As such, Plaintiff argues that A.O.K. had

---

[6] Plaintiff states that A.O.K. entered into an agreement with a "tool man" to work on the set of Benjamin Button. Plaintiff alleges that it was the tool man's responsibility to make A.O.K. aware of any problems with the equipment provided by A.O.K.  The "tool man" reported directly to Jonas Kirk of A.O.K. See Exhibit A to Plaintiff's opposition, pg. 25 (the tool man "is supposed to make A.O.K. aware if there is something faulty").

A.O.K. refutes this argument, stating that the tool man is not employed by A.O.K., and that there is no written agreement to this effect.

10

garde over the chop saw at the time it was being utilized by Plaintiff.

Considering the evidence before the Court, genuine issues of material fact exist as to Plaintiff's negligence claim as well, namely, the relationship between the tool man, and what his precise role was.  Specifically, it is unclear whether knowledge by the tool man regarding any problems with the chop saw could or should be charged to A.O.K.  While A.O.K. denies that it employed the tool man, it admits that the tool man was to "make A.O.K. aware if there is something faulty" with any of the tools.  Accordingly,

**IT IS ORDERED** that A.O.K.'s **Motion for Summary Judgment (Rec. Doc. 12)** is hereby **DENIED.**

New Orleans, Louisiana, this 15th day of August, 2008.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE